## D. DUDLEY CAPRON, Respondent, *v.* J. WALLACE DOUGLASS, Appellant.

1. EVIDENCE — WHEN NOT OBJECTIONABLE AS CUMULATIVE. Where it is apparent on the trial of an action that the sustainment of the testimony of a witness is of importance to the party offering it, the exclusion of the testimony of another, in regard to the same subject-matter, on the ground that it is merely cumulative, is erroneous.

2. SAME — STATUTE FORBIDDING PHYSICIANS AND SURGEONS TO DISCLOSE PROFESSIONAL INFORMATION — WAIVER OF PROTECTION CONFERRED THEREBY — WHEN WAIVER AS TO ONE SURGEON OPERATES AS A WAIVER TO ANOTHER. Where a party to an action, by failing to interpose an objection, permits a surgeon to testify to facts discovered in performing an operation on him, thus waiving the privilege conferred by the statute (Code Civ. Pro. § 834) which prohibits the disclosure of such information, he thereby waives the privilege as to another surgeon, who assisted in the same operation, and loses the right to object to his testimony on the same subject.

3. EVIDENCE — CODE CIVIL PROCEDURE, § 834 — DISCLOSURE BY PARTY, IN HIS COMPLAINT AND TESTIMONY, OF THE DETAILS OF HIS PHYSICAL CONDITION OPERATES AS A WAIVER OF THE PRIVILEGE CONFERRED BY THE STATUTE. Where, in an action against a physician for malpractice, the plaintiff, both in his complaint and in his own testimony upon the trial, fully disclosed all of the details of his case, thus revealing the secrets shielded by the statute (Code Civ. Pro. § 834), he thereby forfeited his right to object to the testimony of the surgeons, who had treated him after the alleged maltreatment, as to the nature and extent of his affliction, when offered by the defendant. By his own disclosure of the secrets which the statute was designed to protect, the plaintiff removed his case from the operation of the statute and thereby waived the protection afforded by it. The statutes relating to this privilege (Code Civ. Pro. §§ 834, 836) should be so construed that, when the privilege of a party has been once waived by him in court, either by his own testimony or by that of others given with his knowledge and consent, and his physical condition has been given to the public, the door is then thrown open for his opponent to give the facts as he understands them.

*Capron* v. *Douglass*, 119 App. Div. 919, reversed.

(Argued June 2, 1908; decided October 6, 1908.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered June 4, 1907, affirming a judgment in favor of plaintiff entered upon a verdict and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*James Taylor Lewis* for appellant. It was error on the part of the trial justice to exclude under the provisions of section 834 of the Code of Civil Procedure the testimony of Dr. Fred J. Douglass, a witness called by the defendant. (*Morris* v. *N. Y., O. & W. R. R. Co.*, 148 N. Y. 92; *Matter of Coleman*, 111 N. Y. 220; *Rosseau* v. *Bleau*, 131 N. Y. 177; *Haack* v. *Weicken*, 118 N. Y. 77; 89 App. Div. 508; *McKinney* v. *G. S. Ry. Co.*, 104 N. Y. 353; *Powers* v. *M. S. Ry. Co.*, 105 App. Div. 358; *Clifford* v. *D. & R. G. R. R. Co.*, 188 N. Y. 350; *Parker* v. *Board of Supervisors*, 106 N. Y. 398; *Drake* v. *Page*, 127 N. Y. 574; *People* v. *Sutherland*, 154 N. Y. 355; *Snowden* v. *Town of Somerset*, 171 N. Y. 106; *People* v. *Koerner*, 154 N. Y. 355; *Griffiths* v. *M. S. R. R. Co.*, 171 N. Y. 110.)

*Smith M. Lindsley* and *William S. Mackie* for respondent. There was no error in excluding testimony of Dr. Fred J. Douglass as to the operation at the hospital. (*Nelson* v. *Vil. of Oneida*, 156 N. Y. 223; *Jones* v. *B., etc., R. R. Co.*, 3 N. Y. Supp. 253; 121 N. Y. 683; *Dambmann* v. *M., etc., Co.*, 55 Misc. Rep. 66; *Feeney* v. *L. I. R. R. Co.*, 116 N. Y. 380; *Meyer* v. *Knights of Pythias*, 178 N. Y. 63; *Morris* v. *N. Y., O. & W. R. R. Co.*, 148 N. Y. 95.) Had testimony by Dr. Fred J. Douglass been admissible, it would only have been cumulative evidence, and the exclusion of cumulative evidence is not reversible error. (*People* v. *Superior Court*, 10 Wend. 285; *Powell* v. *Jones*, 42 Barb. 24; *G., etc., R. R. Co.* v. *Sage*, 35 Hun, 95; *Sayre* v. *King*, 21 App. Div. 625; *Shute* v. *Jones*, 24 N. Y. Supp. 637; *White* v. *Town of Ellisburg*, 18 App. Div. 514; *Laing* v. *Rush*, 50 N. Y. S. R. 351; *O'Hara* v. *N. Y. C. & H. R. R. R. Co.*, 92 Hun, 56; *Cullen* v. *Gallagher*, 15 Misc. Rep. 146; *People* v. *Gonzalez*, 35 N. Y. 59; *Page* v. *Ellsworth*, 44 Barb. 640; *Forest* v. *Forest*, 25 N. Y. 510.)

Haight, J.   This action was brought to recover damages against the defendant, a physician and surgeon, upon the ground that he was chargeable with malpractice in treating a fracture of the tibia and fibula of the plaintiff's leg.

Upon the trial evidence was submitted by the plaintiff and his witnesses tending to show that after the plaintiff received the fracture of the bones of his leg the defendant was called as a surgeon to attend the same, and that he was negligent in reducing the fracture and in his subsequent care of the patient. After a lapse of several weeks it was discovered that there had been no union of the fractured bones and the plaintiff was then removed to a hospital in the city of Utica where an operation was performed by Doctor Glass of that city, aided by Doctor Fred Douglass, one of the hospital's staff of surgeons, after which there was a union of the fractured bones and a recovery had by the plaintiff, but with the usefulness of the leg somewhat impaired.   The contention of the defendant was to the effect that he had properly reduced the fracture, placing the broken bones in apposition, but that he was disappointed in their failure to unite, and that the cause of such failure was one that could not be determined by an external examination of the limb, and was only discovered after the plaintiff had been removed to the hospital and an incision made at the place of the fracture, when it was discovered that some of the muscles of the leg had intervened between the broken ends of the bones, preventing their coming together and forming a union.   This condition of the fractured bones was discovered by Doctor Glass at the hospital who performed the operation, and was testified to by him as a witness for the defendant without objection by the plaintiff.   The defendant then called as a witness Doctor Fred J. Douglass, who assisted Doctor Glass in the operation, but his evidence was excluded upon the objection of the plaintiff's counsel under section 834 of the Code, and an exception was taken to such exclusion.

The trial court charged the jury: "If you find that the leg was properly set, the bones placed in apposition at the

time of the first operation by the defendant, and you find that muscular fibres prevented union of the tibia, and that the loose fragment found at the place of fracture of the fibula pre_ vented union of that bone, and that such condition could not have been discovered except by the operation at the hospital requiring extraordinary skill, and find the defendant was not guilty of negligence in failing to discover the condition of non-union prior to the time when he did discover it, then there is no liability and the verdict must be for the defendant." In this connection the jury was further charged, at the request of the defendant, "That if the jury finds from the evidence that the fractured ends of the tibia were separated by tendon, muscle or tissue, and for that reason could not have been made to unite without incision and without the removal of the interposed substance, the plaintiff cannot recover for loss or damage resulting from delayed or non-union of such fragments by reason of the presence of such foreign substance, upon the undisputed facts in this case." The jury found a verdict for the plaintiff. It will, therefore, be observed that under the charge of the court the chief question of fact involved was as to whether there were muscular fibres which intervened between the broken ends of the tibia which prevented its union, and as to whether such a condition could have been discovered except by the operation which was made at the hospital requiring extraordinary skill. It is thus apparent that upon this issue the sustaining of the testimony of Doctor Glass was of importance to the defendant, and had he been permitted to avail himself of the testimony of Doctor Douglass, who assisted Doctor Glass in the operation, the result might have been different. We, consequently, cannot approve of the ruling made upon the ground that the evidence was merely cumulative ; for it being offered upon the trial of the case to sustain the defendant's defense, he had the right to have it considered by the jury.

The serious question presented upon this review calls for a construction of sections 834 and 836 of the Code of Civil Procedure. Section 834 is, so far as material, as follows : " A per-

son duly authorized to practice physic or surgery, * * *
shall not be allowed to disclose any information which he
acquired in attending a patient, in a professional capacity, and
which was necessary to enable him to act in that capacity."
Section 836, among other things, provides, that the provisions
of the section apply to a surgeon, "unless the provisions
thereof are expressly waived upon the trial or examina-
tion by the person confessing, the patient or the client.
* * * The waivers herein provided for must be made
in open court, on the trial of the action, or proceeding, and
a paper executed by a party prior to the trial, providing
for such waiver shall be insufficient as such a waiver. But
the attorneys for the respective parties, may prior to the trial,
stipulate for such waiver, and the same shall be sufficient
therefor." There can be no question with reference to the
discovery made by Doctor Glass and Doctor Douglass in
their operation upon the plaintiff at the hospital coming
within the express language of the provisions of section 834
of the Code, and the testimony, therefore, under ordinary
circumstances would be privileged. But the question here
presented is as to whether such privilege has been waived by
the plaintiff upon the trial. He and his counsel sat by and
permitted the testimony of Doctor Glass to be given without
interposing any objection thereto, thereby waiving the priv-
ilege which the plaintiff might have availed himself of had
he seen fit. He has thus permitted the condition of his
broken limb to be given to the public in an open trial,
thereby forever preventing it and its condition from being a
secret between himself and his physician. The intent of the
legislature in enacting the statute making such information
privileged was, doubtless, to inspire confidence between the
patient and his physician, so that the former could fully dis-
close to the latter all the particulars of his ailment without
fear that he may be exposed to civil or criminal prosecution,
or shame and disgrace, by the disclosure thus made, and thus
enable the latter to prescribe for and advise the former most
advantageously. As was said by RUGER, Ch. J., in *McKinney*

v. *Grand Street, P. P. & F. R. R. Co.* (104 N. Y. 352):
" After its publication no further injury can be inflicted upon
the rights and interests, which the statute was intended to
protect, and there is no further reason for its enforcement.
The nature of the information is of such a character that
when it is once divulged in legal proceedings, it cannot be
again hidden or concealed. It is then open to the considera-
tion of the entire public, and the privilege of forbidding its
repetition is not conferred by the statute. The consent hav-
ing been once given and acted upon cannot be recalled, and
the patient can never be restored to the condition which
the statute, from motives of public policy, has sought to
protect."

In the case of *Morris* v. *N. Y., Ont. & W. Railway Co.*
(148 N. Y. 88) it was held that when a party who has been
attended by two physicians in their professional capacity at the
same examination or consultation, both holding professional rela-
tions to him, calls one of them as a witness in his own behalf in
an action in which the party's condition as it appeared at such
consultation is the important question, to prove what took
place, or what the witness then learned, he thereby waives
the privilege conferred by the section of the Code in question,
and loses his right to object to the testimony of the other
physician, if called by the opposite party to testify as to the
same transaction. And in the case of *People* v. *Bloom,*
which we have considered and determined in connection with
this case at this present term, we have held that where the
waiver of the privilege is by admitting the testimony of the
physicians without objection in a civil action, he cannot there-
after invoke the privilege by objecting to their testimony in
a criminal action against him, in which he is charged with
having committed perjury upon the former trial. It would
thus seem that under the authorities alluded to, the plaintiff
by admitting the evidence of Doctor Glass to be given with
reference to the discovery made at the operation, thereby
also is deemed to have waived the privilege as to Doctor
Douglass, who was there assisting Doctor Glass in the opera-

tion.  But we prefer to place our decision in this case upon
broader grounds.

This action, as we have seen, was for malpractice.  The
plaintiff both in his complaint and in his testimony has fully
disclosed all of the details of his affliction as it existed both at
his home and at the hospital.  He has given in much detail
how the fractures occurred, how they were treated, his pain
and suffering, and so far as he was able to comprehend, when
not under the influence of anæsthetics, the particulars of the
operation at the hospital.  He, himself, has, therefore, given
to the public the full details of his case, thereby disclosing
the secrets which the statute was. designed to protect, thus
removing it from the operation of the statute.  In other
words, he has waived in open court upon the trial all infor-
mation which he might have kept secret, by disclosing it him-
self.  The character of the action necessarily calls for a dis-
closure of his condition and the treatment that was adopted
by the defendant and those assisting him.  To hold that
the plaintiff may waive the privilege as to himself and his
own physicians and then invoke it as to the defendant and his
physicians, would have the effect of converting the statute
into both a sword and a shield.  It would permit him to prose-
cute with the sword and then shield himself from the defense
by the exclusion of the defendant's testimony.  It would
enable the plaintiff to testify to whatever he pleased with
reference to his condition and the treatment adopted by the
defendant without fear of contradiction.  The plaintiff could
thus establish his cause of action, and the defendant would
be deprived of the power to interpose his defense by reason
of the closing of the mouth of his witnesses by the provisions
of the Code referred to.  Such a construction of its provisions
we think was never contemplated by the legislature.  It would
lead to unreasonable and unjust results.  Instead thereof a
construction of the provisions of the Code, to the effect that
when the privilege of the plaintiff has been once waived by
him in court, either by his own testimony or by that of others
given with his knowledge and consent, and his physical con-

2

dition has been given to the public, the door is then thrown open for his opponent to give the facts as he understands them. This, to our minds, affords a more just and equitable rule and is the one that was evidently contemplated by the legislature. (*Edington* v. *Ætna Life Ins. Co.*, 77 N. Y. 564; *Clifford* v. *Denver & R. G. R. R. Co.*, 188 N. Y. 349; *Rauh* v. *Deutscher Verein*, 29 App. Div. 483; Wigmore on Evidence, section 2389; *Becknell* v. *Hosier*, 10 Ind. App. 5; *Nave* v. *Baird*, 12 Ind. 318; *Hennessy* v. *Kelly*, 64 N. Y. Supp. 562, 566.)

The judgment should be reversed and a new trial ordered, with costs to abide the event.

CULLEN, Ch. J., GRAY, WERNER, WILLARD BARTLETT, HISCOCK and CHASE, JJ., concur.

Judgment reversed, etc.